349 So.2d 1275 (1977)
James Lawrence WILLIAMS et al.
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 11354.
Court of Appeal of Louisiana, First Circuit.
June 13, 1977.
Rehearing Denied August 24, 1977.
Writs Refused November 4, 1977.
*1276 Paul H. Due, Baton Rouge, for James Lawrence Williams and Mrs. Annie Di Mattia Williams plaintiffs-appellees.
Iddo Pittman, Jr., Hammond, for State Farm Mut. Auto. Ins. Co. defendant-appellant.
A. Clayton James, Jr., Franklinton, for Gregory L. Ballew and Mrs. Dorothy Ballew defendants-appellants.
Joseph F. Keogh, Baton Rouge, for Allstate Ins. Co. defendant.
Before ELLIS, CHIASSON and PONDER, JJ.
ELLIS, Judge:
This is a suit by James Lawrence Williams and Annie Di Mattia Williams for damages arising out of the wrongful death of their son, Roy L. Williams. Defendants are Gregory L. Bellew, Dorothy Bellew, his mother, State Farm Mutual Automobile Insurance Company, their liability insurance company, and Allstate Insurance Company, plaintiff's uninsured motorist insurer. After trial on the merits, judgment was rendered in favor of plaintiffs and against Mr. Bellew, State Farm and Allstate in varying amounts. The suit was dismissed as to Mrs. Bellew. From this judgment, the parties cast have appealed.
The accident happened on December 29, 1974, at the interchange of Interstate Highway 55 and U.S. Highway 190, just west of Hammond, Louisiana. Mr. Bellew, who was driving to his home in McComb, Mississippi, had left I-55 to purchase some gasoline at a filling station in the southeast quadrant of the interchange. In order to return to the interstate, he had to drive about 200 feet east on U.S. 190, make a U turn and head west to the entrance ramp. U.S. 190, in that area is a four lane divided highway, with a grassy median strip. A paved cross over is provided about 200 feet east of the filling station.
Mr. Bellew testified that he looked to his left as he prepared to enter U.S. 190 from the station, and saw a motorcycle under the overpass, about 200 yards to the west, heading east. He stated that he pulled into the right lane of the highway, moved into the left lane almost immediately, and actuated his left turn indicator. As he was making his U turn, his car was struck, on its left rear side, by the motorcycle. The state troopers who investigated the accident fixed the point of collision four and one half feet from the northerly edge of the left hand east bound lane of U.S. 190 and just to the rear of the Bellew vehicle, which came to a halt in the cross over entirely off the traveled portion of the highway.
The only eyewitness to the accident, one of the attendants at the filling station, testified that Mr. Bellew had driven from the station to the cross over in the right hand eastbound lane of the highway, and had started his U turn from that lane, cutting across the left lane to the cross over.
The trial judge believed that the accident happened as related by the attendant, and *1277 found that Mr. Bellew was negligent in cutting across the left lane in front of Roy Williams, and that his negligence was the sole proximate cause of the accident.
All defendants allege that the trial court erred in making that finding. They attack the credibility of the gas station attendant, and point to various alleged inconsistencies between the physical evidence and the findings of the trial judge. After a careful review of the record, we find no manifest error in the decision of the trial judge in accepting the testimony of the service station attendant. Although there are discrepancies between the testimony given in his deposition and at trial, he was consistent in his statement that Mr. Bellew made his turn from the outside or right hand lane of traffic. Neither do we find the physical evidence in the case to be inconsistent with the conclusion of the trial judge.
Allstate further claims that the trial court erred in finding that the limits of liability under its uninsured motorist coverage applicable to this accident was $150,000.00 rather than $15,000.00. The policy herein was issued on April 3, 1974, and had no fixed date of expiration. The total premium was $258.00, which was paid in three installments: $103.00 as of the date of issue, $79.00 on July 1, 1974, and $77.50 on September 24, 1974. Under its uninsured motorists coverage the policy provided limits of liability of $5,000.00 for each person and $10,000.00 for each accident. The coverage was $50,000.00 for each person and $100,000.00 for each accident under its liability coverage. The coverage provided to Mr. Bellew under the State Farm liability policy was $10,000.00. It is not contested by Allstate that, because three vehicles were covered under its policy, the total uninsured motorists coverage available thereunder is $15,000.00, and that Mr. Bellew was uninsured or underinsured within the meaning of R.S. 22:1406(D), which at the time of the issuance of the policy, in part, provided:
"D. (1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits described in the Motor Vehicle Safety Responsibility Law of Louisiana, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage."
"D. (2)(b) For the purposes of this coverage the term `uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the uninsured motorist coverage carried by the insured."
By Act 154 of 1974, effective August 1, 1974, the above sections were amended to read as follows:
"D. (1) No automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of *1278 bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage or selects lower limits."
"(2) For the purposes of this coverage the term uninsured motor vehicle shall, subject to the terms and conditions of such coverage, also be deemed to include an insured motor vehicle when the automobile liability insurance coverage on such vehicle is less than the amount of the damages suffered by an insured and/or passengers in the insured's vehicle at the time of an accident, as agreed to by the parties and their insurers or as determined by final adjudication."
Plaintiffs claim that, since the above provision went into effect prior to the date of the accident, it automatically increased the uninsured motorists protection from $15,000.00 per person to $150,000.00, triple the amount of the liability coverage carried by Mr. Williams. We find this claim to be without merit. R.S. 22:1406(D)(1) provided that, after August 1, 1974, no policy could be "delivered or issued for delivery" without providing for the expanded uninsured motorists coverage. Since this policy was issued and delivered prior to the effective date of the act, we do not believe that the act can have the effect of amending or altering the provisions thereof. On the contrary, we hold that it applies only to policies issued and delivered after August 1, 1974. See Lindsey v. Aetna Casualty & Surety Company, 324 So.2d 842 (La.App.2nd Cir. 1975).
Plaintiffs also argue that, since the policy had no date of expiration, and since the premium was paid in installments, the policy was, in effect, reissued as of the payment date of each installment. As pointed out above, the last installment payment was made subsequent to the effective date of Act 154 of 1974. It also appears from the record that plaintiffs were not, at that time, given the opportunity to reject the expanded coverage or elect lower limits. Therefore, if the policy were, in fact, "reissued", with the payment of each installment, plaintiffs would be correct.
However, the policy was not, in fact, issued without a date of expiration. Under the specific terms thereof, the policy period is shown on the premium statement to be from April 3, 1974, to April 3, 1975. "Renewal" is defined in R.S. 22:636.1(A)(5) as follows:
"`Renewal' or `to renew' means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate of notice extending the term of a policy beyond its policy period or term; provided, however, that any policy with a policy period or term of less than six months shall for the purpose of this chapter be considered as if written for a policy period or term of six months. In addition, any policy written for a term longer than one year or any policy with no fixed expiration date, shall for the purpose of this chapter, be considered as if written for successive policy periods or terms of one year, and such policy may be terminated at the expiration of any annual period upon giving twenty days notice of cancellation prior to such anniversary date, and such cancellation shall not be subject to any other provisions of this chapter."
R.S. 22:636.1(A)(6) states:
"`Nonpayment of premium' means failure of the named insured to discharge when due any of his obligations in connection with the payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit."
The record does not reflect that any new policy or renewal or extension certificate was issued or contemplated upon the payment of the installments. Under the law, and the terms of the policy, the policy could be cancelled upon the non-payment of a premium installment, but there is no provision *1279 for automatic lapse in such an event. We therefore conclude that the existing policy was maintained in effect rather than renewed by the payment of the installments, and that the limits of liability specified therein for the uninsured motorist protection are applicable in this case.
Allstate next complains of an award of penalties and attorney's fees made as a result of its alleged failure to pay $2,000.00 towards the funeral expenses incurred by plaintiffs, as provided by its policy. There is no dispute as to the immediate eligibility of the claim for $2,000.00, although the total amount of funeral expenses sought herein is claimed by all defendants to be grossly excessive. Demand was made on April 17, 1975, and no action was taken relative thereto by Allstate. Upon a second demand on February 12, 1976, the claim was immediately paid. Allstate alleges that no payment was made of the claim after the first demand because of "bureaucratic oversight," and that it has been in good faith throughout.
R.S. 22:658 requires that claims be paid "within 60 days after receipt of satisfactory proofs of loss". Arbitrary or capricious failure to make payment subjects the insurer to penalties of 12% and reasonable attorney's fees for the collection of the claim. We think that penalties and attorney's fees were properly assessed. The claim was clearly payable and was not paid within the 60 days after proofs were submitted. Inadvertence cannot excuse the failure to pay under those circumstances.
Allstate further complains that no credit was given in the judgment for the $2,000.00 paid towards the funeral expenses. This claim is correct, and credit for the payment will be allowed.
Finally, all parties defendant allege that the awards of both general and special damages made by the trial court were excessive. An award of $50,000.00 was made to each parent for the loss of their son. Roy L. Williams was 21 years old at the time of his death, and resided with his parents. He was an only child. He did not contribute towards the household expenses, and his parents were in no way dependent upon him for support. Both parents professed the deepest love and affection for their son, and his mother testified that he was her "whole life." In making the $50,000.00 award, the trial judge stated that he was "genuinely" impressed with the testimony of both Mr. and Mrs. Williams concerning the profundity of their loss. " Considering the dictum of the Supreme Court in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), we find this award to be within the very broad discretion accorded district judges in fixing awards.
The special damages complained of are the amounts awarded for funeral expenses. These include the following items:

Henry McNeely & Son Funeral
 Home, Inc. $2,447.60
Ceiling and cement finishing of
 vault 90.00
Rose Memorial Park 375.00
Flowers 132.30
Three crypt granite tomb 8.424.00
 __________
 $11,468.90

We are of the opinion that the plaintiffs cannot recover an unreasonably high award for funeral expenses. However, defendants must prove that the expenses claimed are out of line with average, reasonable funeral costs. No such showing has been made in this case. We note that the granite vault or tomb listed above contains three crypts, whereas only one is necessary for the interment of Roy Williams. This item will therefore be reduced to the sum of $2,808.00. The sum of $2,000.00 which has been paid by Allstate should be allowed as a general credit against the funeral expenses. The total award for special damages, including the above funeral expenses, was $11,874.60. This amount shall be reduced to $4,258.60.
Accordingly, the judgment appealed from is amended and there will be judgment in favor of James Lawrence Williams and against Gregory L. Bellew, State Farm Mutual Automobile Insurance Company and Allstate Insurance Company, in solido, for $54,258.60, together with legal interest from date of judicial demand until paid; the liability of State Farm being limited to *1280 $5,000.00 thereof, plus interest, and the liability of Allstate being limited to $7,500.00 thereof, plus interest; further, there will be judgment in favor of James Lawrence Williams and against Allstate Insurance Company for $1,740.00 in penalties and attorney's fees, with legal interest thereon from date of judicial demand until paid; further, there will be judgment in favor of Annie Di Mattia Williams, and against Gregory L. Bellew, State Farm Mutual Automobile Insurance Company and Allstate Insurance Company in solido for $50,000.00; the liability of State Farm being limited to $5,000.00 thereof, plus interest, and the liability of Allstate being limited to $7,500.00 thereof, plus interest. In all other respects, the judgment is affirmed. Costs of this appeal will be shared equally by the plaintiffs and defendants-appellants.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.