413 So.2d 606 (1982)
Timothy BULLARD, et ux.
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, OFFICE OF HIGHWAYS.
No. 14668.
Court of Appeal of Louisiana, First Circuit.
April 13, 1982.
Roger M. Fritchie, Baton Rouge, for plaintiffs-second appellant.
Owen M. Goudelocke, Baton Rouge, for Dept. of Transp. and Development-first appellant.
John C. Miller, Baton Rouge, for Howard Needles and Tammen & Bergendoff.
Randall Theunissen, Lafayette, for J. B. Talley & Co.
Robert A. Hawthorne, Jr., Baton Rouge, for Barnard & Burke.
William C. Kaufman, III, Baton Rouge, for St. Paul Fire & Marine-third appellant.
Paul Marks, Jr., Baton Rouge, for Emp. Commercial Union Ins. Co. of America.
*607 Before COVINGTON, COLE and WATKINS, JJ.
COVINGTON, Judge.
This is a suit for wrongful death and survival action brought by Timothy Bullard and Anna Marie Murphy Bullard, the father and mother of their deceased son, Michael Bullard, who was mortally injured on February 23, 1977, when a large, dead tree, which was standing in the median of Interstate 10, fell and struck the vehicle of Michael Bullard. At the time, Bullard was traveling in a westerly direction on said highway in West Baton Rouge Parish, Louisiana, while in the course and scope of his employment with Acadian Hills Country Club. As a result of the tree falling onto his vehicle, Bullard sustained such severe and painful injuries that he died 65 days after the accident, at the age of 27 years, survived by his parents and two brothers. His parents brought the instant action seeking damages. Initially, only the State of Louisiana, through the Department of Transportation and Development, Office of Highways, as owner of the property comprising the interstate highway, the median and the tree, was named as defendant. Subsequently, plaintiffs supplemented their petition to name as additional defendants the consulting engineers on the project for the particular section of the highway, Barnard & Burke and Howard, Needles, Tammen & Bergendoff (a joint venture of the engineering firms of Barnard & Burke, a partnership, and Howard, Needles, Tammen & Bergendoff, also a partnership); the aforesaid two engineering firms; and the contractor who constructed that particular portion of the highway, J. B. Talley & Company, Inc.
The State filed third party demands against the construction company and its bonding company, Employees Commercial Union Insurance Company of America,[1] and against the consulting engineers; Talley also third partied the State and the consulting engineers; the said engineers third partied the State and the contractor Talley; and St. Paul Fire & Marine Insurance Company intervened to recover on the claim paid by them as workmen's compensation carrier for the deceased's employer, Acadian Hills Country Club.
After trial on the merits, the trial court rendered judgment on April 3, 1981, in favor of the plaintiffs[2] in the amount of $528,354.91 against the State. In addition, judgment was rendered in favor of all other defendants and the third party demands were dismissed. The intervention of St. Paul, the workmen's compensation carrier, was recognized in the amount of $25,322.54 by preference and priority out of the plaintiffs' award.
From this judgment, the State has appealed. The plaintiffs also appealed insofar as the judgment rejected the demands against the consulting engineers and the contractor and insofar as it failed to grant the plaintiffs the quantum they had sought. St. Paul also appealed the dismissal of the consulting engineers and contractor.
The evidence shows that the large tree which struck the Bullard vehicle was located near the edge of the natural median area between the two eastbound lanes and the two westbound lanes of I-10. The tree in question was visibly rotten or defective. The photographs in evidence show a large portion of the trunk of the tree to be rotten. The physical evidence, along with the expert testimony presented leaves no doubt "that the fall of the tree was the result of its defective and decayed condition," as the trial court found. The evidence further establishes that the tree was owned by and in the custody of the State at the time of the accident.
*608 Consequently, under the codal doctrine of strict liability for things in one's custody, LSA-C.C. art. 2317,[3] as interpreted by Loescher v. Parr, 324 So.2d 441 (La.1975), the State must be held liable. In Loescher, supra, our Supreme Court concluded that the owner and custodian of a tree was liable to third persons for damages occasioned by its falling. The Court determined that delictual responsibility did not necessarily depend upon negligent acts, but upon "fault," and that the owner or custodian of a thing which causes unreasonable risk of injury to others is at fault. The Court further stated that the owner or custodian is not exculpated from liability simply because the tree was caused to fall by wind which was not so abnormal as to be unforeseeable. In the instant case the State has not shown that the damage was caused by the fault of the victim, or by the fault of a third person, or by an irresistible force. Here, as in Loescher, the wind, although high and gusty, was not so abnormal as to be unforeseeable. On appeal, the liability of the State is not questioned.[4] See Scott v. State, Department of Transportation and Development, 392 So.2d 482 (La.App. 1 Cir. 1980), writ denied, 396 So.2d 921 (La.1981). In Scott, we stated that strict liability under LSA-C.C. art. 2317 as interpreted in Loescher v. Parr, supra, applied to governmental agencies, such as the Department of Transportation and Development.
On the question of the liability of the consulting engineers, the record reflects that in the original suit the plaintiffs alleged that the consulting engineers were responsible for the defective design and construction of the highway by designing and constructing it in such a manner that it impeded the natural flow of ground water, thereby allowing a lake-like body of water to form in the area of the natural setting median during periods of rainy weather, which standing water promoted the deterioration of the tree which fell, causing the accident in question.
The contention that the drainage, or lack of drainage, caused the tree to fall is not substantiated by the evidence. The record fails to show a causal link between any periodic flooding and the falling of the dead tree. Both the chief project engineer and the interstate engineer testified that the roadway had no significant effect on the drainage in this area. It was a low-lying area before construction of the roadway and it was the same afterwards. There was no evidence that the particular tree which fell and struck the Bullard vehicle died or rotted due to exposure to excessive water or flooding.
Another claim made by the plaintiffs was that the consulting engineers were negligent in designing the highway in that wider recovery zones between the traveled portion of the highway and the tree line of the median should have been allowed. As to this issue, the record contains no evidence showing that the consulting engineers failed to follow accepted standards of interstate highway construction. Moreover, the consulting engineers had no responsibility for the designation of trees to be removed as hazards and those which should remain in the natural setting.
In contending negligent construction, the plaintiffs stated that J.B. Talley & Company failed to fulfill its contractual obligation to remove from the natural setting any trees which might constitute a hazard to the traveling public when it allowed the tree in question to remain in the median. *609 In denying that it had any such duty or obligation, Talley introduced the State publication entitled "Standard Specifications for Roads and Bridges" which governs the activities of a general contractor as to its obligations on construction of public roadways, to support its argument that it was the duty of the State's project engineer to select which trees were to be removed and which were to remain. The project engineer confirmed in his testimony that it was his duty to designate the trees. It was not the duty of the general contractor to make such designation.
The trial court awarded the sum of $528,354.91 to the two parents. The Department contends this is excessive. The plaintiffs contend that it is inadequate.
The trial judge, in his written reasons for judgment, made the following comments as his reasons for the award:
"Dr. Hanchey, a neurosurgeon who treated Michael Bullard, testified that the decedent sustained two fractured cervical vertebra and a broken neck in addition to serious bruises, lacerations and facial injuries. Dr. Hanchey said the decedent suffered much pain but ultimately died of the `Beta negative' strain of pneumonia.
* * * * * *
"The plaintiffs, in the principal demand, also prayed for an award of TEN THOUSAND DOLLARS AND NO CENTS ($10,000.00) for each day Michael Bullard endured pain and suffering as result of the injuries he sustained. Upon reviewing the testimony of Dr. Hanchey, who said that medication for pain had to be kept at a minimum, and particularly that of Luca Barbato, who stated Michael Bullard slept most of each day, the Court is led to believe that toward the end of Michael Bullard's days on earth his level of pain was low and therefore he was able to sleep. The Court, basing its decision solely on the testimony and evidence presented at the trial, feels an award of THREE THOUSAND DOLLARS AND NO CENTS ($3,000.00) a day for pain and suffering, for a total of ONE HUNDRED NINETY FIVE THOUSAND DOLLARS AND NO CENTS ($195,000.00), is a just and adequate award.
"The plaintiffs, in the principal demand, also prayed for SEVEN HUNDRED THOUSAND DOLLARS AND NO CENTS ($700,000.00) for wrongful death. The Court, with prior jurisprudence in mind, is of the impression such an award would be excessive. In Williams v. State Farm Mut. Auto Ins. Co., 349 So.2d 1275 (La.App. 1st. Cir. 1977), writ denied 351 So.2d 175 (La.1977), the First Circuit held an award of FIFTY THOUSAND DOLLARS AND NO CENTS ($50,000.00) to each parent, for the death of a 21-year-old, who was the only child, for whom both parents professed the deepest love and affection and whose mother testified that he was her whole life, was not excessive. This was the highest award heretofore granted; however, while the Court does feel that SEVEN HUNDRED THOUSAND DOLLARS AND NO CENTS ($700,000.00) would be excessive in the light of the prior jurisprudence, an award equal to or slightly less than that given in Williams, supra, would be an injustice. The testimony of Timothy Bullard, father of the decedent and that of the decedent's brothers, showed the family relationship to be uncommonly close and loving and the loss of Michael Bullard an unbearable family tragedy. The fact that Michael Bullard's mother was terminally ill with cancer at the time of the accident, though not in itself compensable, and could not attend her son's funeral only added to her personal sorrow.
"It was brought out at the trial that because of Mr. Timothy Bullard's profession, the family had to move from place to place quite often. Since the family never stayed very long in one locale, relationships with people outside the family were seldom developed and as a result the members of the Bullard family depended a great deal on one another for companionship and comradery so common among friends. It was also brought to the Court's attention that since Mr. Timothy Bullard's occupation as a geologist *610 kept him away from his family for periods of time, he made up for the absence by frequently taking the family on camping trips. This close and loving family relationship continued after the children reached adult age and left the family home. Michael Bullard became a professional golfer for a local country club and he and his father and brothers spent much time together playing the game. Mr. Timothy Bullard testified that since Michael Bullard's death he has not been able to play the game or even look at a golf course without remembering his son and becoming depressed. He also testified that his wife seemed to have lost the will to live after her son died. To reiterate, the Court is most aware of the prior decisions concerning awards for wrongful death [see Bond v. Jack, 387 So.2d 613 (La.App. 3rd Cir. 1980); Brandon v. State, Department of Highways, 367 So.2d 137 (La.App. 2d Cir. 1979); and Marceleno v. State, Department of Highways, 367 So.2d 882 (La.App. 2d Cir. 1978)]; however, an award of ONE HUNDRED FIFTY THOUSAND DOLLARS AND NO CENTS ($150,000.00) to each parent for the wrongful death of Michael Bullard under the circumstances, is not only justified but is required in the face of all the evidence presented at trial."
We now turn to a consideration of the issue of quantum. For the loss of love and affection, the trial court awarded the sum of $150,000 to each parent for the wrongful death of Michael Bullard. We accept the factual findings of the trial court, as quoted above; but we think an award of this magnitude was an abuse of discretion under the circumstances of this case. LSA-C.C. art. 1934(3). The award is inordinately disproportionate to awards heretofore made in similar cases.
In Knotts v. State, Department of Highways, 395 So.2d 419 (La.App. 3 Cir. 1981), writs denied, 400 So.2d 669, 670 (La.1981), the court found that awards of $75,000 to each parent for the loss of "an unusually gifted, bright, intelligent and talented 11-year-old girl" were "somewhat generous but they are within the very broad discretion accorded trial court judges in fixing awards." The child was "her mother's constant companion and a combination sister, tutor, teacher, nurse and loving sibling to her 3-year-old, afflicted brother."
An award of $50,000 was made to each parent for the loss of their 21 year old son, residing with them but making no financial contribution for support, in Williams v. State Farm Mutual Automobile Insurance Company, 349 So.2d 1275 (La.App. 1 Cir. 1977), writs denied, 351 So.2d 175 (La.1977). The trial judge was impressed with the "profundity of their loss"; both parents expressed "deepest love and affection" for their son.
In Lapoint v. Breaux, 395 So.2d 1377 (La. App. 1 Cir. 1981), writ denied, 399 So.2d 611 (La.1981), the court, taking into consideration that the parents of an 18 year old boy were "very fond of their child, and his loss was a great blow to them", awarded $50,000 to each parent. The son also contributed to his parents' support, for which they were granted an additional sum of $30,000.
In Walker v. St. Paul Insurance Companies, 343 So.2d 251 (La.App. 1 Cir. 1977), writ denied, 345 So.2d 61 (La.1977), the court reduced a jury award of $107,512 to $40,000 for each parent for the loss of a major child, not living with his parents or contributing to their support.
In Youngblood v. Oil Well Chemical Company of Louisiana, 352 So.2d 316 (La.App. 4 Cir. 1977), the court affirmed an award of $40,000 to the mother of an 18 year old girl, who helped at home and helped with the other children.
In Gunter v. Wiley, 325 So.2d 654 (La. App. 3 Cir. 1975), the court affirmed an award of $40,000 to each parent for each child killed in a vehicular accident (a boy, age 14; a girl, age 10). The record showed that the parents established "a community of interest, love, and affection".
In Foster v. Houston General Insurance Company, 407 So.2d 759 (La.App. 2 Cir. 1981), the court affirmed an award of $40,000 *611 to the mother of a 17 year old mentally retarded son for loss of love and affection.
Other awards, while not used for achieving uniformity, do serve as aids in determining whether a particular award is so out of line as to be an abuse of discretion. Walker v. St. Paul Insurance Companies, 343 So.2d 251 (La.App. 1 Cir. 1977), writ denied, 345 So.2d 61 (La.1977).
Considering the guidelines for appellate review of damage awards, as enunciated in Reck v. Stevens, 373 So.2d 498 (La. 1979), and Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), we find that the trial court's awards in the instant case are of such a magnitude and are so substantially higher than in other similar cases (being twice as high as the highest award in the cited cases) as to be an abuse of discretion. We believe, taking all factors into consideration, that the highest award that can be granted at this time to a parent for the loss of a child is the sum of $100,000.
Accordingly, for the foregoing reasons, we modify the awards made in this case by reducing them to the sum of $100,000 for each parent, and amend the judgment to reflect this reduction. In all other respects the judgment is affirmed. Costs of this appeal are assessed against the State of Louisiana, Department of Transportation and Development in the amount of $15,079.58.
AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] Employees Commercial Union Insurance Company of America's motion for summary judgment was granted by the trial court, but this Court reversed the judgment on appeal. Bullard v. State, Department of Transportation and Development, 394 So.2d 626 (La.App. 1 Cir. 1980).
[2] Upon the death of Mrs. Bullard, her two surviving sons, Timothy Bullard, II and Dennis Bullard, were substituted as parties.
[3] LSA-C.C. art. 2317 provides:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
[4] In Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980), the Supreme Court held that public bodies may be found liable for damages for things in their custody, and that where delictual responsibility is based on legal fault under LSA-C.C. art. 2317, rather than on negligence, the fact of whether a public body had knowledge of the existence of the danger is irrelevant. See also Garrison v. State, Through Department of Highways, 401 So.2d 528 (La.App. 2 Cir. 1981).