447 So.2d 1112 (1984)
John D. LANG
v.
Rodney PRINCE.
Blanche ARELLANES
v.
Alfred PRINCE.
Nos. 83 CA 0362, 83 CA 0363.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Writ Denied May 25, 1984.
*1114 R. Bruce Macmurdo, Baton Rouge, for Blanche Arellanes.
Philip Deal, Monroe, for John Lang.
Paul Marks and Joseph G. Simmons, Baton Rouge, for Dairyland Insurance Company, Alfred Prince, and Rodney Prince.
W. Luther Wilson and A. Shelby Easterly, III, Baton Rouge, for Gulf States Utilities Company.
Dorothy Dubroc Thomas, Baton Rouge, for South Central Bell Telephone Company.
R. Randall Roche, Baton Rouge, for Department of Transportation.
Horace C. Lane, Baton Rouge, for State Farm Mutual Automobile Insurance Company.
Before SHORTESS, LANIER and CRAIN, JJ.
CRAIN, Judge.
These consolidated cases arose out of an automobile accident which occurred when a car struck a utility pole located in the shoulder of Louisiana Highway 190 in Denham Springs, Louisiana. Defendants, Gulf States Utility Company (GSU), South Central Bell Telephone Company (South Central Bell) and the State of Louisiana, Department of Transportation and Development (DOTD), appeal the judgment of the trial court finding them solidarily liable.

FACTS
The trial judge made the following findings of facts, which we adopt as our own:
William D. Lang, the fourteen year old son of plaintiff John D. Lang, and Michael J. Benton, the eighteen year old son of plaintiff Blanche R. Arellanes, were killed on July 22, 1978 while riding as passengers in the automobile owned by Alfred O. Prince and being driven by his minor son, Rodney W. Prince. The Prince vehicle moved partly onto the shoulder of Highway 190 and struck a utility pole located in the middle of the improved shoulder killing the two passengers. The pole was owned by defendant South Central Bell and jointly used by defendant Gulf States Utility Company.
The accident occurred at night in the town of Denham Springs along a stretch of Highway 190, a major four-lane thoroughfare. The Prince vehicle was traveling west at forty-five (45) to fifty (50) miles per hour in an area where the posted speed limit was forty-five (45) miles per hour.
There was differing testimony as to why the Prince vehicle moved onto the shoulder. Rodney Prince testified that he had intentionally pulled onto the shoulder to check a flat tire.
Tim Benton, a passenger in a car moving alongside the Prince vehicle in the inner lane also heading west, testified that the Prince boy was trying to communicate with the occupants of the other car, all of whom had been together shortly before that evening.
Additionally, we note that Rodney Prince admitted at trial that he had consumed *1115 three or four "pony" beers (7 oz.) that night between five or six o'clock and midnightthe time of the accident.

ACTION OF THE TRIAL COURT
Plaintiff, John D. Lang, brought suit for wrongful death against Rodney Prince and his liability insurer, Dairyland Insurance Company (Dairyland), South Central Bell, GSU, and the State of Louisiana, through the DOTD, among others. Plaintiff, Blanche Arellanes, brought suit for wrongful death against Alfred O. Prince, the owner of the car, Dairyland, GSU, South Central Bell and the DOTD. Dairyland stipulated to judgment in each case for its policy limits of $10,000.
The two cases were consolidated for trial. After trial on the merits, the trial judge rendered judgment against defendants GSU, South Central Bell, the DOTD, and Dairyland (subject to its policy limits of $10,000), in solido, in the amount of $113,175.80 to be paid to plaintiff, John D. Lang, and $200,737.67 to plaintiff, Blanche Arellanes, in addition to expert witness fees and court costs. The trial judge also found Rodney Prince solidarily obligated to plaintiff, John D. Lang, in the amount of $113,175.80.[1] From that judgment, only defendants GSU, South Central Bell and the DOTD appeal.

ASSIGNMENTS OF ERROR
The DOTD urges on appeal that it should not have been held liable because, according to its contentions, the highway met construction and safety standards at the time it was built, the utility pole located in the improved shoulder was not a hazard, and the fault of Rodney Prince relieved it of liability. South Central Bell and GSU contend on appeal that the pole was not the legal cause of the accident. GSU contends that it should bear no responsibility for the pole's location since it was owned by South Central Bell and only used by GSU for the placement of its electrical wires. Finally, South Central Bell claims the damage award was excessive and that the sums awarded for Mrs. Arellanes' hospitalization, lost wages and future medical treatment are not recoverable under Louisiana law.

LIABILITY OF THE DOTD
The trial judge concluded that the DOTD was negligent[2] in allowing the utility pole to remain in the middle of the shoulder, finding that:
The pole was only fifty-two (52) inches off the main traveled portion of a major road. For at least one and one-half miles back up the road in a [sic] easterly direction from the accident site, there was an unobstructed eight foot improved shoulder on the north side of Highway 190. Then suddenly to a driver heading west, a pole was located squarely in the center of the shoulder giving the driver who moved onto the shoulder no cushion of safety or chance to return to the main portion of the road. This hazardous condition was a contributing cause to this fatal accident. In this particular situation, the two left wheels of the Prince vehicle were still on the traveled portion of the highway when the fatal impact occurred on the [sic] occupants of the Prince vehicle might have escaped serious injury had the shoulder been unobstructed.
The net effect of the unobstructed improved shoulder followed by a pole in the *1116 middle of the shoulder was to create a trap.
. . . . .
The Court concludes that by permitting the location of the pole the Department of Transportation and Development was in contravention of Louisiana R.S. 48:35 which requires adherence to the standards set by the American Association of State Highway Officials of which Louisiana is a member. The standards in effect at the time of the accident (and as far back as 1954) required an unobstructed shoulder of eight to ten feet for a highway in the class of Highway 190.[3]
The DOTD has a duty to maintain the shoulders of all highways in the state system. Willis v. State ex rel. Louisiana Department of Highways, 321 So.2d 819 (La.App.1st Cir.1975), writ denied, 325 So.2d 280 (La.1976); LeBlanc v. State, 419 So.2d 853 (La.1982). The duty to maintain reasonably safe highways and shoulders extends to the protection of those people who may drive onto the shoulder inadvertently having no knowledge or reason to have knowledge of a defective condition of the shoulder that would make such action hazardous. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Rue v. State, Department of Highways, 372 So.2d 1197 (La. 1979). This duty includes passengers in vehicles that stray from the road. Sinitiere, 391 So.2d at 825. The decision whether a condition of a highway actually is a dangerous and hazardous one is factual. Dagnall v. Louisiana Department of Highways, 426 So.2d 276 (La.App.4th Cir. 1983), writ denied, 433 So.2d 160 (La.1983).
Plaintiff's expert witness, Duaine Evans, testified that for 6/10ths of a mile east of the point where this pole was located there was a continuous unobstructed shoulder 7-9 feet wide, giving the driver an expectation of a shoulder. Both Evans and James Fister, plaintiff's other expert witness, testified that the position of the pole was a hazard. Fister stated that the situation was made even more hazardous by the fact that it was located in an area where the road turns left, where a driver would be more likely to continue straight if he lost control or inadvertently strayed.
As the trial judge pointed out in his reasons for judgment, a picture is worth a thousand words in this case. The pictures which were introduced into evidence alone are compelling proof of the hazard created. They show the improved shoulder with poles located completely off the north margin for some distance. Then suddenly, as a driver proceeds west, the road curves left so that a driver entering the curve is pointed exactly at the spot where the pole is located. This pole is squarely in the improved shoulder. Additionally, there is no grade differentiation between the shoulder and the roadway itself. Consequently, nothing warns the motorist that the vehicle is leaving the highway as would be the case with a roll-over curb.
Finally, even the DOTD's expert witness, William Hickey, testified that he would not design a road with a pole within the improved shoulder as it is hazardous to the public. The DOTD stipulated to knowledge of the pole's location for 19 years prior to the accident yet failed to take corrective action; consequently, we have no difficulty with the trial court's conclusion that the DOTD was negligent. Sinitiere, 391 So.2d at 825.
We are not persuaded by the argument of DOTD that since only two accidents have occurred at this pole in the last eight years this should be proof that the location of the pole is not hazardous. As we pointed *1117 out in Ketcher v. Illinois Central Gulf Railroad Company, 440 So.2d 805 (La. App. 1st Cir.1983), writ denied 444 So.2d 1220 (La.1984), evidence of absence of other accidents has been considered relevant for the limited purpose of showing whether the thing or premises at issue were hazardous, but that evidence is not conclusive. The other evidence in this case far outweighs the evidence of absence of other accidents.
Finally, the DOTD argues that the third party fault of Rodney Prince should relieve the DOTD of any liability for the death of his passengers. We find that contention likewise without merit.
There was never any question in this case that Rodney Prince was negligent. A motorist's duty of reasonable care includes the duty to keep his vehicle under control. Russo v. Guillory, 322 So.2d 233 (La.App. 4th Cir.1975), writ denied, 325 So.2d 608 (La.1976). The trial judge found Prince to be solidarily obligated to the plaintiff, Lang, along with the other defendants. Prince failed to appeal and therefore that judgment is final as to him. However, we do not find his negligence to have been an intervening cause that would relieve the other defendants from liability.
"When the actionable negligence of two tort feasors contributes in causing harm to a third party, each of them is responsible for the damage. They are solidarily liable." Dixie Drive It Yourself System New Orleans Company v. American Beverage Company, 242 La. 471, 137 So.2d 298, 301 (1962). Since we have determined that both Rodney Prince and the DOTD were negligent in their actions and each was a substantial cause of the accident in this case, it follows that they are debtors in solido and neither is relieved by the other's fault. See Sinitiere, 391 So.2d at 827. Third party fault under La.C.C. art. 2317 which contributes to the accident along with fault of the owner-custodian, results in the same solidary liability where that third party fault is not considered to be the sole legal cause of the accident. Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1978); Hessifer v. Southern Equipment, Inc., 416 So.2d 368 (La.App. 1st Cir.1982), writ denied, 420 So.2d 982 (La.1982); Godwin v. Government Employees Insurance Company, 394 So.2d 751 (La.App. 3rd Cir.1981).

LIABILITY OF SOUTH CENTRAL BELL AND GSU
The trial court found that both GSU and South Central Bell were negligent for not moving the pole satisfactorily when requested to do so by the DOTD in 1959 and further for allowing the pole to remain in its hazardous position for 19 years.
We have already concluded in our discussion of the DOTD's arguments on appeal that the location of the pole posed an unreasonable hazard and was a legal cause of the accident. The same reasoning is relevant to the liability of South Central Bell and GSU under La.C.C. art. 2315.

SOUTH CENTRAL BELL
As previously noted, the basic difference between strict liability under La. C.C. art. 2317 and negligence under La.C.C. art. 2315 is knowledge of the condition which creates the unreasonable risk of injury. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982). The record in this case is replete with evidence that South Central Bell knew of the location of the pole in the improved shoulder of the highway. In fact, South Central Bell placed the pole in its present location in the improved shoulder. The evidence does not indicate whether the pole was relocated after the shoulder was built or before. However, this makes no difference as South Central Bell had the plans and knew the pole would be in the improved shoulder after its completion. Additionally, it had 19 years to observe its location. Therefore, the bottom line question in this case, as in Kent, is: having knowledge of the unreasonable risk of injury created by the pole, could South Central Bell take "reasonable steps under the circumstances to protect against the risk" that a driver who inadvertently *1118 left the roadway and even partially entered the shoulder would come into contact with the pole? If South Central Bell could take such steps, did it? We conclude that South Central Bell could have taken steps to eliminate the risk and did not. Consequently, South Central Bell's knowledge of the hazard and its failure to remedy the situation renders it liable along with the DOTD.

GSU
The evidence shows that when Highway 190 was widened to four-lanes in 1959, the DOTD sent correspondence to both GSU and South Central Bell requiring that certain poles be moved, including the pole involved in this accident. The pole was then moved by South Central Bell to the location it was in when Rodney Prince struck it on July 22, 1979. South Central Bell was the sole owner of the pole. GSU merely was allowed to use the pole to string its lines pursuant to a joint-use agreement with South Central Bell. There is no evidence in the record that GSU participated in the relocation of the pole by South Central Bell or even had knowledge of its movement. Under those particular facts, we cannot agree with the trial judge's conclusion that GSU was equally responsible along with South Central Bell and the DOTD for the hazardous position of the pole. Accordingly, we reverse that part of the trial court's judgment finding GSU liable in damages to the plaintiffs.

DAMAGES
Appellant, South Central Bell, alone complains of the amount and type of damages awarded to Mrs. Arellanes. Based on an examination of other wrongful death awards in Louisiana, South Central Bell claims that the award of $150,000 in general damages to Mrs. Arellanes is excessive. South Central Bell cites the case of Bullard v. State, Department of Transportation and Development, Office of Highways, 413 So.2d 606 (La.App. 1st Cir.1982) as support for its contention that the highest award that can be granted to a parent for the loss of a child is the sum of $100,000.
Before a trial court damage award may be questioned as excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Reck v. Stevens, 373 So.2d 498 (La.1979). It is only after an articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review, for articulated reason, be considered excessive. Carollo v. Wilson, 353 So.2d 249 (La.1977). Prior awards may serve as an aid in determining excessiveness only where the present award is shown to be greatly disproportionate to past awards for truly similar injuries. Reck, 373 So.2d at 501.
In the Bullard case, the trial court awarded the sum of $150,000 to each parent for the wrongful death of their son. After noting that previously the highest award to a parent was $75,000, this court on appeal concluded that the award in Bullard was excessive under the circumstances of the case and reduced the award to $100,000 per parent. Since Bullard was decided, this court has upheld an award of $145,000 in Johnson v. Folse, 438 So.2d 1137 (La.App. 1st Cir.1983) to a mother for the loss of her daughter. Also, in Williams v. City of New Orleans, 433 So.2d 1129 (La.App. 4th Cir.1983), appl. not considered, 437 So.2d 1135 (La.1983), the Fourth Circuit upheld an award of $150,000 to a mother for the loss of her son.
In view of the extraordinary circumstances of the case before usMrs. Arellanes' extreme mental and physical illness resulting from her son's deathwe do not find the trial judge's award of $150,000 in general damages excessive. As the trial court found:
Mrs. Arellanes' damages are unique to this Court's experience. The unrebutted evidence showed that Mrs. Arellanes developed a diagnosed, chronic mental disorder with serious physical side-effects as a direct result of the loss of her son. She was partially disabled from working as a result thereof and has sustained *1119 substantial and continuing medical expenses.
Mrs. Arellanes at first appeared to accept her son Michael Benton's death in a stoical fashion. At the funeral home after the burial, however, she suddenly became very nervous, shaken and distracted. She began denying her son had died. In the months that followed, according to the testimony of her husband James Arellanes, her son Glen Benton and her treating psychiatrist, Dr. Louis Cenac, she made numerous trips to the emergency rooms of various hospitals in the Baton Rouge area and asked to see her son Michael Benton.
Eventually, emergency room personnel came to realize that her son did not exist and that Mrs. Arellanes was suffering from delusions.
On August 30, 1978, Mrs. Arellanes was put into the psychiatric wing of Doctor's Hospital where she spent ten days. During this period she denied that her son had been killed.
. . . . .
Since her son's death Mrs. Arellanes has obviously been a sick woman. The undisputed testimony was that she was taking seven different drugs at the time of the trial more than three and one-half years after the accident, including the anti-depressant Elavil. She suffers from migraine headaches, anxiety, vomiting and fainting spells which increase when she is reminded of her son's death. During the month long split between the two days of trial, she was compelled to make several visits to hospital emergency rooms for anxiety attacks and severe migraine headaches.
Proof that Mrs. Arellanes' condition was caused by the death of her son was clear from the evidence. Michael Benton was her favorite child and had always lived at home with his mother. Under the particular circumstances of this case, we find that the award of $150,000 was within the trial judge's discretion.
In addition to the general award of $150,000, Mrs. Arellanes was awarded $2,368.10 for her own medical bills, $20,000 for future medical expenses and $25,000 for lost wages. South Central Bell claims that these are not recognized elements of damages recoverable in a wrongful death action under Louisiana law and should be stricken.
La.C.C. art. 2315 states that "survivors in whose favor this right of action survives may also recover the damages which they sustained through the wrongful death of the deceased". (Our Emphasis) Plaintiff argues that this language in the article contemplates the special damages awarded in this case, although no such damages have previously been awarded in a wrongful death action. While there is certainly no abundance of jurisprudence or commentary on this issue, we do find one case in which these damages were disallowed.
In LaPlace v. Minks, 174 So.2d 895 (La. App. 1st Cir.1965), writ refused, 248 La. 123, 176 So.2d 452 (1965), the plaintiff brought suit for his own physical disability, loss of earning capacity, and pain and suffering sustained by him when he learned of his daughter's death in a car accident. In a separate suit plaintiff brought suit for the wrongful death of his daughter. This court found in LaPlace, after citing Holland v. St. Paul Mercury Insurance Co., 135 So.2d 145 (La.App. 1st Cir.1961), that:
The jurisprudence reviewed by this Court in the Holland case established clearly that in the situation before this Court in the instant case, the law has not permitted recovery to one for his own physical disability, loss of earning capacity, or pain and suffering sustained by him as a result of either seeing the personal injuries of another, or learning of the death of another, against tortfeasors, who are responsible for the personal injury or death of the other. (Our emphasis) LaPlace, 174 So.2d at 897.
Other than the LaPlace case, there have been no cases mentioning recovery of these type of damages under La.C.C. art. 2315. *1120 It was obvious from the trial judge's reasoning that he took into consideration Mrs. Arellanes' extraordinary suffering in his award of $150,000 in general damages. Therefore, for the reasons contained in Holland and LaPlace, we decline to extend recovery of these damages under La.C.C. art. 2315 at this time and reverse that part of the trial judge's judgment awarding Mrs. Arellanes damages for her own medical expenses and lost wages.
For the foregoing reasons, we affirm the judgment of the trial court finding defendants, South Central Bell and the DOTD, solidarily liable to plaintiffs John Lang and Blanche Arellanes. We reduce the amount awarded to Blanche Arellanes to $153,369.57, reflecting the deduction of that amount awarded for special damages which we find nonrecoverable in this case. We reverse that part finding GSU liable to the plaintiffs. All costs are to be paid equally by defendants South Central Bell and DOTD.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
SHORTESS, J., dissents in part and assigns reasons, but concurs in that part of the opinion which reverses as to GSU.
SHORTESS, Judge, dissenting in part, concurring in part.
I respectfully dissent from that part of the opinion which casts DOTD and South Central Bell. I concur in the result which absolved GSU from liability.
I feel that the majority has ignored the facts surrounding this accident which clearly support a finding that it was not caused by any negligence on the part of DOTD. The majority holds that DOTD is liable regardless of any causal connection between the activity of the State and the accident.
A motorist is under a duty to drive prudently which includes the duty to control his vehicle and to keep a proper lookout. Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4th Cir.1980); Courtney v. Lambert Construction Company, Inc., 355 So.2d 72 (La.App. 1st Cir.1978), writ denied, 356 So.2d 430 (La.1978). There was no evidence presented that this major four-lane, east-west U.S. Highway was defective in any way. The road was in good condition, and a driver exercising ordinary care and reasonable prudence should have easily negotiated the curve. The evidence does indicate that 13 million vehicles have passed the utility pole from 1973 to the date of this accident, and it has been hit but twice. Furthermore, we are talking about a large utility pole with overhanging lights and with signs appended to it some four and one-half feet off the traveled portion of the roadway.
Additionally, the record reveals the following facts. Rodney Prince had been drinking beer for at least six hours prior to the accident. He left Aaron Brent's house in Denham Springs around midnight to go to Baton Rouge and was chasing a vehicle driven by Cindy Hayes. Hayes was in the left lane and Prince was in the right lane as they proceeded west on U.S. 190. The accident occurred in a heavily developed commercial area about six blocks west of U.S. 190 and Range Avenue, the main intersection in Denham Springs. As the two vehicles headed west, Prince attempted to overtake Hayes on the right. The telling testimony came from Tim Benton, the brother of decedent Mike Benton. He testified, "Iall I know is he was waving and he hitwent right into the pole." "But for" Prince's failure to maintain a proper lookout and failure to maintain control of his vehicle, this accident would not have happened. The pole played no substantial causal role in the accident.
The duty owed by DOTD in these highway shoulder cases is to the motorist guilty of only "inadvertent deviation." This is the common thread which runs through the duty-risk analysis beginning in Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979), to the recent LeBlanc v. State, 419 So.2d 853 (La.1982). The facts of this case are inapposite to the facts presented in LeBlanc, which dealt with a four- to six-inch drop-off between the roadway *1121 and the shoulder. All the cases dealing with DOTD's duty to the straying motorist are factually similar in that a depression or drop-off between the roadway and shoulder is involved.
As articulated by the Supreme Court in LeBlanc, DOTD's duty is to the motorist who is guilty only of inadvertent deviation from the highway onto the shoulder. The deviation here was a negligent one caused by failure to maintain proper control and failure to see what should have been seen.
Finally, I note that Prince violated the express provisions of La.R.S. 32:79 which provide that a vehicle shall be driven as nearly as practicable entirely within a single lane and shall not move from such lane until the driver has first ascertained that such movement can be made in safety.
ACCORDINGLY, I DISSENT IN PART AND CONCUR IN PART.
NOTES
[1] Mrs. Arellanes did not sue Rodney Price individually. At the time suit was filed Prince was a minor, but by the time judgment was rendered had reached the age of majority.
[2] Insofar as the DOTD is concerned this case might be analyzed as a strict liability case under La.C.C. art. 2317 since the location of the pole could make the shoulder defective. However, since the negligence analysis and the strict liability analysis are basically the same except for the imputation of knowledge to the owner or custodian in strict liability cases, the nomenclature here is not important since the DOTD had knowledge of the pole on the shoulder. Buchanan v. Tangipahoa Parish Police Jury, 426 So.2d 720 (La.App. 1st Cir.1983).

The question in either case is whether the pole at its location on the shoulder created an unreasonable risk of injury.
[3] We find the unusual location of the pole in this case was hazardous given the physical surroundings whether or not the shoulder was required, was of proper construction according to American Association of State Highway Officials (AASHO) standards, or was properly or improperly built to comply with urban or rural standards. Consequently, we do not find a violation of AASHO standards necessary for a determination of negligence. The location of the pole was so peculiar to other poles in the area and to the shoulder that was actually in place and maintained, that no general construction requirements can be drawn from our holding under the particular facts of this case.