497 So.2d 375 (1986)
James THOMAS, Jr. and Myrtle Francis Thomas, Plaintiffs-Appellees,
v.
WEST CALCASIEU-CAMERON HOSPITAL, et al., Defendants-Appellants.
No. 85-1251.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
*377 Terry J. Manuel, Lake Charles, for defendants-appellants.
E.M. Nichols, Lake Charles, for plaintiffsappellees.
Before GUIDRY, DOUCET and KING, JJ.
KING, Judge.
The sole issue presented by this appeal is whether or not the trial court erred in the amount of its award for general damages to the plaintiff who was injured during pre-operative procedures in the defendant hospital.
Myrtle Francis Thomas (hereinafter referred to as plaintiff) and her husband, James Thomas, Jr., filed suit against West Calcasieu-Cameron Hospital (hereinafter referred to as the Hospital) and its employee, Mr. Joe Barnett (hereinafter referred to as Barnett). Plaintiff and her husband seek recovery for medical expenses and damages sustained as a result of alleged negligent acts of Barnett, the Hospital's employee. This negligence allegedly occurred during pre-operative procedures at the Hospital when Barnett attempted to draw a blood sample from plaintiff's right forearm and damaged the median or ulnar nerve. On the day of trial, defendants admitted liability and stipulated to special damages and a bill for a deposition used at trial. A trial was held only on the issue of quantum. After the trial, the trial judge rendered judgment in favor of plaintiff and her husband and against defendants, the Hospital and Barnett, in solido, for the amount of the stipulated special damages and general damages in the amount of $90,000.00, together with interest and court costs. A written judgment was signed. Plaintiff's counsel filed a motion and was granted an order to amend the judgment to set forth in a dollar amount the court costs previously taxed against the Hospital, which is a political subdivision, as provided by La.R.S. 13:5112 A. Defendant, West Calcasieu-Cameron Hospital, timely appeals the amount of general damages. Plaintiffs answer the appeal seeking an increase in quantum. We affirm.

FACTS
On May 13, 1980 plaintiff had been admitted to the Hospital and was being prepared for surgery for stomach problems. Defendant, Barnett, a medical technician and employee of the Hospital, applied a tourniquet to plaintiff's right arm and attempted to draw a blood sample with a needle and syringe. Barnett inserted the needle into plaintiff's arm and the needle damaged her median or ulnar nerve which is located at least one and one-half to two inches below the surface of the forearm where the needle was inserted. After first improperly inserting the needle into plaintiff's arm in an unsuccessful attempt to draw blood, Barnett removed the needle and was successful in drawing blood from another location in plaintiff's arm.
Following the incident which gave rise to this cause of action, plaintiff was unable to use her arm for about seven to eight months. During this time, plaintiff suffered substantial pain in her right forearm and hand, and, due to the fact that her incapacity was in her right dominant hand, plaintiff was unable to attend to many personal needs without assistance.
After a seven or eight month period following the incident, and up to the date of trial over five years later, plaintiff was unable to lift small or heavy objects with *378 her right hand and was unable to pick up any object with her right hand without concentration and great difficulty. Plaintiff complains of a lack of feeling in her lower right arm and in several of her fingers and has had to adjust to using her left hand for tasks which she would normally have performed with her right hand.
On September 13, 1985, less than two months prior to the trial on this matter, plaintiff underwent surgery by an orthopedic surgeon, Dr. R. Dale Bernauer (hereinafter referred to as Dr. Bernauer) who attempted to free the median or ulnar nerve from scar tissue which Dr. Bernauer believed to be the cause of plaintiff's disability to her right arm and hand. During the same surgery, Dr. Bernauer treated plaintiff for an apparently unrelated carpal tunnel syndrome in her right wrist. The operation, insofar as relieving plaintiff's pain and numbness in her right forearm and fingers, had not proven to be successful as of the date of trial.
Dr. Bernauer was deposed for trial purposes approximately five weeks after the corrective surgery was performed and approximately two weeks prior to trial. Dr. Bernauer testified that, in the absence of any other explanation, he believed that the scar tissue which was found on plaintiff's median or ulnar nerve during the corrective surgery was caused by the injection of the needle by defendant, Barnett. Dr. Bernauer also testified that plaintiff had not improved as a result of the corrective surgery, but that he expected some improvement, possibly when inflammation around the nerve subsided. Dr. Bernauer verified plaintiff's complaints of pain over a five year period. Further, Dr. Bernauer testified that, if the pain in plaintiff's arm did not improve, the pain might be attributed to scarring of the lining of the nerve and that attempting to open the lining of the nerve to free the nerve fibers from the scar tissue would involve a good chance of injuring the nerve fibers themselves. Corrective surgery would therefore be inadvisable and unlikely. Plaintiff also sustained a five to six inch scar as a result of the September, 1985 corrective surgery which also caused her some pain and disfigurement.
At the trial on the merits special damages in the total amount of $1,226.91 were stipulated to by counsel for plaintiffs and defendants. The Hospital and Barnett admitted to liability in this matter and plaintiffs' counsel offered into evidence the deposition of Dr. Bernauer. Testifying were the plaintiff and her husband. At the conclusion of the testimony the court took the matter under advisement. Judgment was rendered on November 15, 1985, and the plaintiff was awarded $90,000.00 for general damages and plaintiff and her husband were awarded the stipulated special damages. In his written reasons for judgment, rendered on November 15, 1985, the trial judge made several findings of fact and conclusions which we quote:
"Mrs. Thomas had a good, usable painfree right hand and arm prior to this incident. She has suffered pain for over five years and lost the greater part of the usefulness of her dominant hand. There is not good reason to believe she will not suffer pain the remainder of her life and there is good reason to believe that the loss of function of the hand is permanent.
Mrs. Thomas is a forty-eight year old Caucasian, the mother of five adults. Her husband is the instrumentation superintendent at a local chemical plant. She is a physically attractive lady with weight problems and other physical problems unrelated to the present injury. It was obvious at trial that this injury, pain and loss of function has been devastating to her. The court has encountered few claimants who are willing to undergo surgery hoping for relief for pain more than five years subsequent to injury and less than two months prior to trial on the issue of damages for that injury. That action alone lends credibility to her complaints, which, incidentally, have not been attacked in any manner and are supported by Dr. Bernauer.
* * * * * *

*379 There are no cases in this state where damages for this injury have been fixed by any other court. Considering the general jurisprudence concerning cases involving long-term pain and loss of body function, the court finds that an award to Mrs. Thomas in the amount of $90,000.00 should fairly compensate her herein."
The Hospital appeals and assigns as error: (1) the trial court's general damages award as being excessive and an abuse of discretion; and (2) the trial court's failure to consider similar cases in determining the amount of the award. Plaintiff and her husband answer the appeal asking that the general damages award of the trial court judgment be increased from $90,000.00 to $180,000.00.

QUANTUM AWARD
The Hospital alleges, as its first assignment of error, an abuse of the trial court's discretion in awarding plaintiff $90,000.00 in general damages.
Before a trial court's award in general damages may be viewed as excessive or inadequate, this Court must look first, not to prior awards, but to the individual circumstances peculiar to the case. Only after an analysis of the facts of a particular case and an analysis of the particular injuries to the party may this Court determine the excessiveness or inadequacy of the award. Reck v. Stevens, 373 So.2d 498 (La.1979); Darbonne v. Safeco Ins. Co. of America, 452 So.2d 801 (La.App. 3 Cir. 1984). After an examination of the particular facts of a case, an appellate court must then determine whether the trier of fact clearly abused his much discretion in awarding damages. Former La.C.C. Art. 1934(3);[1]Reck, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Darbonne, supra.
An examination of prior awards, in the initial determination of excessiveness or insufficiency, serves a limited function to serve as an aid in determining whether the award complained of is greatly disproportionate to past awards for "truly similar" injuries. Reck, supra, at page 501, citing Coco, supra. The mass of awards for truly similar injuries may therefore be used as an aid in determining a disproportion in the award complained of when viewed in light of the facts of the case; however, an appellate court will only disturb the award of the trial judge upon an initial determination of an abuse of the great discretion afforded the trier of fact. La.C.C. Art. 2324.1; Williams v. State Farm Mut. Auto. Ins. Co., 349 So.2d 1275 (La.App. 1 Cir.1977), writ den., 351 So.2d 175 (La.1977).
After a careful examination of the record, we find that there is sufficient evidence to support the findings of facts and conclusions expressed in the trial court's written reasons for judgment. Plaintiff had a normal usable painfree right arm prior to the incident in May, 1980.
As a result of the May, 1980 incident, plaintiff now complains of a complete loss of feeling in several fingers in her right hand and in her forearm. She complains of a pain similar to an electrical charge in several fingers. Dr. Bernauer testified that these symptoms were justified on the basis of his examinations of plaintiff, and that plaintiff's symptoms were consistent with this type of injury. Dr. Bernauer also verified plaintiff's continuing complaints over several years of pain and numbness in her right arm and hand.
As to the duration of plaintiff's pain and numbness in her arm, we do not believe that the trial judge manifestly erred in finding that "[T]here is not good reason to believe she will not suffer pain the remainder of her life." Dr. Bernauer, testifying in his deposition two weeks prior to trial, stated that he expected some improvement *380 as to the pain and numbness after plaintiff's swelling from the surgery subsided; however, the doctor testified that he would have expected some improvement since the surgery, and that plaintiff was, on the date of his deposition, still experiencing pains similar to those which she had before the operation. Plaintiff, testifying at trial, stated that, if anything, the pain was worse after the September, 1985 corrective surgery than before and that the numbness had not improved. In view of the fact that there is sufficient evidence in the record to support a finding of permanent disability, we do not find that the trial court manifestly erred in finding such a disability. We also note that in a personal injury action, a plaintiff need not provide medical testimony to prove pain and suffering or disability. Campbell v. Mouton, 412 So.2d 191 (La. App. 3 Cir.1982), writ den., 415 So.2d 954 (La.1982).
The Hospital contends that a statement by Dr. Bernauer in his deposition precludes a finding of permanent disability. When asked whether plaintiff would suffer any residual pain or disability, Dr. Bernauer replied "Nothing that remains to be seen." However, viewing this statement in light of the remainder of the doctor's testimony, we view this statement to mean that it was still too early after the corrective surgery for the doctor to make a specific finding of the permanence and severity of plaintiff's disability. Triers of fact must often deal in probabilities, however, our review of the record shows that in this instance the trial judge was correct in finding that more probably than not, plaintiff would suffer pain and disability for the remainder of her life.
The Hospital also contends that plaintiff's complaints of pain are either exaggerated or are a result of some other physical ailment, such as plaintiff's carpal tunnel syndrome. Apparently, the Hospital bases its belief of plaintiff's exaggeration of her complaints on Dr. Bernauer's finding that the nerve conduction velocity of plaintiff's medial nerve was essentially normal and on Dr. Bernauer's inability to detect gross sensory loss by pinprick test. We note however that Dr. Bernauer stated that plaintiff's numbness was occasional, but was consistent with this type of injury. Apparently, the sensory loss was so significant that Dr. Bernauer decided to operate. The pinprick test and the nerve conduction velocity test were discussed in relation to plaintiff's numbness and not in relation to the pain which she was experiencing. Finally we note, as did the trial court, that the fact that plaintiff was willing to undergo surgery five years after her injury and just before her upcoming trial lends credibility to her complaints of pain.
As to the claim that plaintiff's carpal tunnel syndrome contributed to her pains, the carpal tunnel syndrome was not discovered until May 13, 1985 and was surgically corrected during the September, 1985 operation. Dr. Bernauer also testified that the carpal tunnel syndrome was an independent finding. While it is likely that plaintiff suffered some pain for an unknown period of time due to the carpal tunnel syndrome, this pain was centralized in her wrist area. However, plaintiff has suffered and will continue to suffer pain in her right forearm and hand as a result of the May, 1980 incident.
Having found the record substantiates the trial court's findings of plaintiff's pain and loss of sensation in her right hand and forearm and the permanent nature of her disability, we now look to the effect of this disability on her.
Prior to the incident of May, 1980, plaintiff was a woman of generally good health, approximately 43 years old. She was a housewife who regularly attended to domestic duties and enjoyed gardening, frisbee throwing, and fishing. Although plaintiff had several other medical problems between the May, 1980 incident and the date of trial, including open heart surgery, two major back surgeries, several arteriograms and a heart attack, none of these problems directly related to the obvious pain and uselessness of her right arm and hand. As plaintiff testified at the time of trial, and as pointed out by appellant, plaintiff was and is now somewhat restricted by her heart condition and her existing back problems. *381 However, these conditions likely would not have prevented her from doing most activities which she now is either unable to do or has extreme difficulty in performing as a result of the pain and inability to use her right arm and hand.
As a result of Barnett negligently injecting a needle into her arm, plaintiff is now unable to use her dominant right arm and hand for many purposes. She is unable to pick up small or heavy objects, is unable to thread a needle and is often unable to put earrings on, and must rely on and become accustomed to using her left arm and hand for many purposes, including handling toilet paper. She constantly drops objects which require two good hands to control; for instance, she is usually unable to unscrew a bottle cap without dropping it to the floor. Due to her lack of sensation in her right arm and hand, she is in danger of severely burning herself while being completely unaware that she is doing so. As a result of the May, 1980 incident, plaintiff is significantly permanently disabled. She will be required to adjust to using her left hand for many simple tasks, making those tasks more difficult, and will be unable to perform many household duties and hobbies which she enjoyed prior to her injury. In light of these specific facts we cannot say that the trial court award of $90,000.00 in general damages to plaintiffs was excessive.
The Hospital contends in its second assignment of error that the trial court failed to consider similar cases in determining the general damage award. As we previously indicated, the responsibility of this Court is to determine, along the guidelines explained in Reck, supra, whether the trier of fact abused his great discretion. As we have found the award to be neither excessive nor inadequate, we pretermit a discussion of the necessity of an examination of prior awards.
Although we are not required to examine past awards for similar injuries in deciding whether or not the trial court award is manifestly excessive or inadequate, particularly since there exists no field of truly similar injuries to choose from, we do here mention the only truly similar case which appellant and appellees have pointed out and of which we are aware. The case of Morgan v. Willis-Knighton Medical Center, 456 So.2d 650 (La.App. 2 Cir.1984), dealt with an injury to plaintiff's ulnar or median nerve which resulted in an assigned 27% disability to plaintiff's right arm, with a significant possibility that pain associated with the nerve damage would not disappear over time. The plaintiff in the Morgan case was a 56 year old territorial field manager whose job required him to drive hundreds of miles each week, and such driving was expected to cause discomfort when driving. Plaintiff was also forced to give up his avocation of repairing and building clocks.
Although we note that the Morgan case is only one case and cannot be considered a field of cases which might be used as an aid in a determination of excessiveness or inadequacy, we find the instant case not to be inconsistent with the Morgan case. In Morgan, the plaintiff was awarded $50,000.00 in general damages plus an award for loss of future income. In the instant case, plaintiff has very likely suffered more of a disability to her arm than did the plaintiff in Morgan. The weight of the evidence indicates that plaintiff can no longer use her arm for many, if not all, practical purposes.
In light of the particular facts of the instant case and in comparison with the facts of the Morgan case, we find the general damage award of $90,000.00 to be neither excessive nor inadequate so as to cause us to disturb the award made by the trial court.
For the foregoing reasons, the judgment of the trial court dated December 2, 1985 and the amended judgment dated December 5, 1985 are affirmed. All cost of this appeal are taxed to the defendant-appellant.
AFFIRMED.
NOTES
[1] La.C.C. Art. 1934 was amended and reenacted by Acts 1984, No. 331, effective January 1, 1985, as part of the recent obligations revision. The article, in pertinent part, was reenacted in Acts 1984, No. 331, § 1, as La.C.C. Art. 1999 under Title IV-Conventional Obligations or Contracts, and in Acts 1984, No. 331 § 3, as La.C.C. Art. 2324.1 under Title V-of Quasi Contracts, and of Offenses and Quasi Offenses.