ALFORD, Judge.
The defendant, State Farm Insurance Co., (State Farm) appeals from the trial *555 court decision in favor of the plaintiff, Milton Aikens, awarding $37,400.00 in past and future medical expenses, $99,500.00 in past and future lost wages, and $112,500.00 for past and future pain and suffering, all totaling $249,400.00. State Farm urges the following assignments of error: 1) the jury’s award of general damages is excessive; and 2) the jury’s award of future medical expenses is unwarranted.
FACTS
On August 17,1984, Milton Aikens, while riding his motorcycle on South Sherwood Forest Boulevard in Baton Rouge, was involved in an accident with an automobile driven by the late Ben R. Downing, State Farm’s insured.[1] Mr. Aikens was thrown from his motorcycle, suffering injuries as a result. Mr. Aikens was taken to Our Lady of the Lake Hospital where he was examined by Dr. Samuel C. Irwin who diagnosed him as having a fractured transverse process in the lumbar region of the spine as well as cervical and lumbar strains, in addition to his various contusions and abrasions. Mr. Aikens was released from the hospital on August 20, 1984. During subsequent visits to Dr. Irwin, Mr. Aikens complained of neck and back pain, knee pain, and headaches. In consultation with a Dr. Gold and following an EEG test, Dr. Irwin determined that Mr. Aikens also suffered a post-concussion syndrome. Dr. Irwin treated plaintiff through November 1984, at which time Mr. Aikens asked to be treated by an orthopedist located nearer to his home.
Plaintiff was treated by Dr. Clifton Shepard in December 1984. Dr. Shepard testified that plaintiff reported neck pain radiating into the muscles around the shoulder; lower back pain radiating into the right anterior thigh of the right leg; pain, numbness and feelings of instability of the knee; and that the toes of the right foot had numbness and tingling. Dr. Shepard scheduled arthroscopic surgery for plaintiff’s knee on December 19, 1984, which was subsequently cancelled by plaintiff. Dr. Shepard was out of town obtaining additional medical training from February 1985 through June 1985, during which time plaintiff was referred to Dr. Andrew Ku-charchuk.
Dr. Kucharchuk examined plaintiff on April 29, 1985, at which time plaintiff complained of low back pain and of knee pain. Dr. Kucharchuk diagnosed plaintiff’s knee problem as a tom medial meniscus and performed arthroscopic surgery on July 17, 1985, to repair the damage. Dr. Kuchar-chuk related the injury to the motorcycle accident. Mr. Aikens continued to see Dr. Kucharchuk through December 1985. At that time, Dr. Kucharchuk determined plaintiff had achieved maximum medical benefit to his knee and assigned a 10-15% disability to the knee. Thereafter, Dr. Ku-charchuk referred plaintiff to Dr. Anthony Ioppolo, a neurosurgeon, for treatment of his back complaints.
Dr. Ioppolo diagnosed severe spinal sten-osis at the L4 level of plaintiff's back with a broad based disk bulge. Dr. Ioppolo testified that testing which included CAT scans and a myelogram, indicated that the spinal stenosis had gradually developed since the accident; he concluded that plaintiff’s condition was caused by the accident. Dr. Ioppolo described this condition as a permanent injury that would worsen with age. However, he noted plaintiff’s condition did not yet warrant surgery. Physical therapy was prescribed to help alleviate plaintiff’s symptoms. Plaintiff testified that he was unable to take all of the prescribed treatment because of financial hardship.
GENERAL DAMAGES AWARD
Defendant contends that the jury’s award of $112,000.00 in general damages is excessive. The appellate standard of review for excessiveness of a trial court award is set forth in Thomas v. West Calcasieu—Cameron Hospital, 497 So.2d 375, 379 (La.App. 3d Cir.1986), wherein the court stated:
*556 Before a trial court’s award in general damages may be viewed as excessive or inadequate, this Court must look first, not to prior awards, but to the individual circumstances peculiar to the case. Only after an analysis of the facts of a particular case and an analysis of the particular injuries to the party may this Court determine the excessiveness or inadequacy of the award. Reck v. Stevens, 373 So.2d 498 (La.1979); Darbonne v. Safeco Ins. Co. of America, 452 So.2d 801 (La. App. 3 Cir.1984). After an examination of the particular facts of a case, an appellate court must then determine whether the trier of fact clearly abused his much discretion in awarding damages. Former La.C.C. Art. 1934(3);. Reck, supra; Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Darbonne, supra.
An examination of prior awards, in the initial determination of excessiveness or insufficiency, serves a limited function— to serve as an aid in determining whether the award complained of is greatly disproportionate to past awards for “truly similar” injuries. Reck, supra, at page 501, citing Coco, supra. The mass of awards for truly similar injuries may therefore be used as an aid in determining a disproportion in the award complained of when viewed in light of the facts of the case; however, an appellate court will only disturb the award of the trial judge upon an initial determination of an abuse of the great discretion afforded the trier of fact. La.C.C. Art. 2324.1; Williams v. State Farm Mut. Auto. Ins. Co., 349 So.2d 1275 (La.App. 1 Cir.1977), writ den., 351 So.2d 175 (La. 1977). [Footnote omitted.]
Plaintiffs injuries have had a substantial impact on his life. At the time of the accident, Milton Aikens was a 27-year-old man who was married with three children. Although at the time of the accident plaintiff was on sick leave with an unrelated elbow injury, he had a high school diploma and was employed as a manual laborer with DSI Transport. In addition to the three days plaintiff was hospitalized following the accident, he spent several more days in the hospital in July 1985 for the surgical repair of his knee. Following the surgery, Mr. Aikens was on crutches for two months.
Plaintiff testified that he was unable to return to his job cleaning eighteen-wheeler tanks after the accident because of the physical demands of the job. Plaintiff further testifies he was not released by his doctors to seek new employment until December 1985, a period of sixteen months after the accident. Plaintiff testified that Dr. Kucharchuk advised him to find light work not involving bending, kneeling, stooping or climbing. Thereafter, plaintiff experienced great difficulty in finding a light duty job until he became employed as a cleaning custodian for Our Lady of the Lake Tau Center in August 1986.
As a result of his injuries, Mr. Aikens is no longer able to enjoy certain activities in which he previously participated. Plaintiff was a physically active man who greatly enjoyed playing basketball; he is now unable to do so. Additionally, plaintiff testified that his interaction with his children has been limited by his condition. Plaintiff is further unable to engage in any heavy physical labor, including some work around the house.
After inquiring into the particular injuries and their effects upon Mr. Aikens, we are unable to say that an award of $112,000.00 in general damages is an abuse of the jury’s much discretion. Nor does an examination of prior jurisprudence reveal the award to be disproportionate to past awards for similar injuries. In Deville v. K-Mart Corporation, 498 So.2d 1122 (La. App. 3d Cir.1986), the court affirmed an award of $350,000.00 in general damages to a woman suffering a 15% disability of the knee and a 20 to 25% disability of the back and who had undergone surgery on both her knee and back. In LeBouef v. Gross, 506 So.2d 879 (La.App. 1st Cir.1987), the court affirmed a general damage award of $250,000.00 to a 35-year-old man who suffered a ruptured cervical disc for which he underwent surgery, a bulging lumbar disk, and cartilage damage to one knee. In *557 Taylor v. Dupree, 484 So.2d 986 (La. App.3d Cir.), writ denied, 488 So.2d 201 (La.1986), the court affirmed a general damage award of $160,000.00 to an insurance salesman who suffered a bulging disc at the L5, SI level and a torn medial meniscus that was surgically repaired.
FUTURE MEDICAL EXPENSES
The jury awarded plaintiff $37,400.00 in past and future medical expenses. Evidence at trial showed that plaintiff had incurred $12,470.18 in medical expenses. Defendant argues that the remaining amount of the $37,400.00 award, $24,-929.82, represents future medical expenses and further argues that no proof was adduced at trial to support an award for future medical expenses.
A factual determination made by the trial court should not be disturbed unless manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Dr. Iop-polo testified that there was a possibility Mr. Aikens would need surgery in the future to relieve his back pain; however, Dr. Ioppolo stated that surgery would only be performed as a last resort. In order to prevent plaintiffs symptoms from worsening, Dr. Ioppolo testified some therapy and medications would be used. The physical therapist who treated plaintiff, Coralie Watts, testified that future physical therapy for Mr. Aikens is recommended as a conservative measure to avoid surgery. Coralie Watts further testified that an average visit for therapy costs approximately $60.00. Mr. Aikens himself testified that the physical therapy was effective in reducing his pain.
On the basis of this testimony, we are unable to say the trial court was manifestly erroneous in awarding future medical expenses. There is ample evidence in the record for the jury to find Mr. Aikens will be required to make future visits to Dr. Ioppolo, as well as continue to take physical therapy treatments to alleviate his symptoms. While we might have awarded plaintiff a lower amount under the circumstances, we cannot say the amount awarded is so high as to constitute an abuse of the trial court’s discretion.
For the reasons assigned in the foregoing opinion, the trial court judgment is affirmed, with all costs of this appeal to be borne by the appellant herein.
AFFIRMED.

. We note that prior to trial, Mr. Aikens and State Farm entered into a stipulation in which State Farm admitted liability on the part of its insured.