PLOTKIN, Judge.
Defendant City of New Orleans appeals a trial court judgment in favor of plaintiff Mark Baker, claiming that the plaintiff failed to prove that the driver of the car involved in the accident which injured the plaintiff was an employee of the city, involved in the course and scope of his employment. Plaintiff cross-appeals, contesting the trial court’s finding that he was one-third comparatively negligent in causing the accident and seeking an increase in the award of $53,026.10 ($8,026.10 stipulated medical expenses plus $45,000 in general damages) reduced by one-third, for a total award of $35,350.73.

Facts:

Plaintiff was riding his bicycle toward the river in the bus lane of the neutral ground on Canal Street about 4:30 p.m. December 4, 1986, when he was struck by a car making a left turn at the corner of St. Charles Avenue. The bumper of the car struck him on his left knee. He was immediately hospitalized and underwent surgery that night.
Baker filed suit against the City of New Orleans and “John Doe,” alleging that his injuries were caused by the negligence of “John Doe,” the driver of an unmarked police vehicle who was engaged in the performance of his duties at the time the accident occurred. He filed an amending and supplemental petition substituting Officer Lester C. St. Amant’s name for “John Doe.”

Liability of the Defendants

The defendants claim that the plaintiff presented no evidence whatsoever to support his contention that Officer St. Am-ant was the driver of the vehicle involved in the accident. They claim that it was unnecessary for them to present any evidence at trial because the plaintiff failed to prove any facts which they, were required to rebut.
The trial was held on two different days. During the first day, only the plaintiff testified. He indicated that there was never any doubt at the scene of the accident that the driver of the vehicle was a policeman. He referred to the driver as “Officer St. Amant” and stated that Officer St. Amant called for police and for an ambulance on a walkie-talkie after the accident. An ambulance did arrive to convey Baker to East Jefferson Hospital.
More importantly, the defendants never asked any questions in an attempt to refute the plaintiff’s claim that he was injured in an accident with an unmarked police vehicle, driven by a police officer. Cross-examination of the plaintiff was limited to questions concerning his decision to ride his bicycle in the bus lane and questions about his alleged employment both before and after the accident.
*661 Baker claims and the City does not deny, that Officer St. Amand was present and available to testify on the first day of trial.
The trial resumed 20 days later. Mr. Philip Y.ales, an independent eyewitness corroborated Baker’s version of the accident, but referred only to the “white car” when he described the accident. After Vales completed his testimony, Baker called Officer St. Amant to testify under cross-examination. The City responded by informing the court that it did not know where the police officer was, that he was not present in court and that “the police officer would not add anything materially.” Thereafter, the plaintiff attempted to introduce the officer’s deposition, but the court erroneously excluded it.
The City offered no evidence on any issue.
The trial judge concluded, and we agree, that the plaintiff proved by a ponderance of the direct and circumstantial evidence, which was not contradicted, that Officer Lester St. Amant was the operator of an unmarked police vehicle, owned by the City of New Orleans, engaged in the course and scope of his employment, which was involved in an accident with the plaintiff.
Additionally, we agree with the trial court’s holding that Officer St. Amant was negligent in causing the accident by making a left turn at an intersection in violation of a “No Left Turn” sign, in the absence of extenuating circumstances or the exceptions granted authorized emergency vehicles. Louisiana jurisprudence imposes a very high degree of care on left-turning motorists, requiring them to take every reasonable precaution to insure that the turn can be made without endangering approaching vehicles. Casimere v. Ryder Truck Rental, Inc., 324 So.2d 855 (La.App. 4th Cir.1975), writ denied 329 So.2d 453 (La.1976). Additionally, Louisiana recognizes a presumption that a left-turning motorist is liable for any accident in which he is involved, placing the burden on the defendant to disprove liability. Dunn v. Snyder, 388 So.2d 450 (La.App. 2d Cir.1980). Since the defendants in the instant case failed to present any evidence whatsoever, they failed to meet their burden of overcoming the presumption of negligence. Therefore, we affirm the trial court judgment holding the defendants liable for plaintiff’s injuries.

Comparative Negligence

Plaintiff challenges the trial court judgment holding him comparatively negligent for riding his bicycle > in the bus lane on Canal Street, claiming that he has been unable to locate any law or ordinance prohibiting a bicyclist from using the bus lane. He implies that the lack of positive law on the subject indicates that his actions were not negligent. Additionally, he alleges that the collision itself took place in the street section of the neutral ground area, not the bus lanes, and that therefore his use of the bus lane, improper or not, was not a factor in causing the accident.
The following provisions of the City of New Orleans Municipal Code Section are applicable to the facts of this case:
Every person riding a bicycle upon a roadway shall be granted all the rights and shall be subject to all of the duties applicable to the driver of a vehicle by the laws of this state declaring rules of the road applicable to vehicles or by the traffic laws of the city applicable to the driver of a vehicle....
Municipal Code Section 38-200.
Whoever shall drive a vehicle of any description over curbs or upon or over a neutral ground shall be guilty of a misdemeanor.
Municipal Code Section 38-116.
On cross-examination at trial, the plaintiff admitted that he was travelling in the neutral ground of Canal Street when the accident occurred. He stated that he habitually rode his bicycle on the neutral ground. When read together, the municipal codal articles cited above provide that bicycles, like other vehicles, are prohibited from driving on the neutral ground. Therefore, we find no error in the trial court’s finding that the plaintiff was one-third comparatively negligent in causing the accident by riding his bicycle in the *662 Canal Street neutral ground bus lane. We affirm the trial court’s decision on this issue.

Quantum

Plaintiff makes two claims concerning damages: (1) that the general damage award of $45,000 was inadequate to compensate him for his extensive injuries and (2) that the trial judge erred in refusing to award him damages for lost wages while he was totally disabled.
The standard for appellate review of the amount of a damage award was established by the Louisiana Supreme Court in Reck v. Stevens, 373 So.2d 498 (La.1979), which stated as follows:
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is [improper].
Id. at 501.
Generally, an appellate court is prohibited from disturbing a trial court determination concerning quantum unless the record in the case reveals that the trial court abused its discretion in fixing damages. Bitoun v. Landry, 302 So.2d 278, 279 (La.1974). The pertinent question in determining whether an abuse of discretion has occurred is whether the award of the trial court can reasonably be supported by the evidence and justifiable inferences from that evidence. Id.
A review of the record in the instant case reveals that the $45,000 general damage award given the plaintiff is too low to be reasonably supported. Plaintiff, who was 20 years old at the time of the accident, suffered a fracture of the lateral aspect of the left tibial plateau, resulting in a 20 per cent permanent disability to his left knee, as well as minor injuries to his wrist and shoulder. After the accident, he was transported at East Jefferson General Hospital, where he underwent extensive knee reconstruction surgery. He was hospitalized for a week. Following his release from the hospital, the plaintiff wore a full leg cast for six weeks, then wore a knee brace for approximately four months. Thereafter, he was forced to rely on crutches for an indefinite period of time. He also underwent extensive physical therapy and had to take pain medication.
The plaintiff is a very young man, who will suffer the effects of this accident for the rest of his life. He has a permanent four- to five-inch scar on his knee. The plaintiffs uncontradicted testimony establishes that he was very athletic prior to the accident and that his injury prevents him from enjoying many of the physical activities he engaged in before he was injured, such as jogging, aerobics, football, baseball, dancing and hacky-sack, a game which involves keeping a golfball-size ball off the ground by using one’s feet. The plaintiff stated that he suffers pain when required to sit or stand for long periods of time. He said that cold weather aggravates his condition and that he is subject to calcium deposits. For those reasons, we find that the trial court abused its discretion in setting the general damage award at $45,000 and hold that the quantum must be increased.
Having found an abuse of discretion, this court must determine the lowest amount the factfinder could reasonably have awarded this plaintiff. Emerson v. Empire Fire & Marine Ins. Co., 393 So.2d 691, 694 (La.1981). In order to determine this amount, we have consulted several previous cases involving similar injuries.
In Aikens v. State Farm Ins. Co., 532 So.2d 554 (La.App. 1st Cir.1988), the court affirmed a general damage award of $112,-000 given a plaintiff who suffered a 10 to 15 per cent disability to a knee injured in an automobile accident. As in the instant case, the plaintiff in Aikens was no longer able to participate in activities which he had previously enjoyed because of his knee and back injuries. Although the plaintiff in the Aikens case suffered a back injury in addition to his knee injury, the opinion indicates that the knee injury was much more severe than the back injury. Addi *663 tionally, the plaintiff’s permanent disability rating in the instant case is greater than that of the plaintiff in the Aikens case. The award in that case was based in part on the court’s finding that the injury had a “substantial impact” on the plaintiff’s life. Id. at 556. That is certainly true in the case at hand.
In London v. Bell, 422 So.2d 260 (La.App. 4th Cir.1982), an award of $100,000 for past, present and future pain and suffering given a pedestrian who suffered a 20 per cent permanent disability of her left knee as a result of an auto accident was affirmed. In that ease, the plaintiff was no longer able to perform her job because it required that she stand for long periods of time. The plaintiff in the instant case also testified that he suffered pain when required to stand for a long time.
This court stated in Cooley v. Allstate Ins. Co., 443 So.2d 739 (La.App. 4th Cir.), writ denied 446 So.2d 1229 (La.1984), that $90,000 was the lowest reasonable award for a plaintiff who had suffered a permanent loss of 10 to 15 degrees mobility in her left knee as a result of a second story balcony collapsing on her. We find that that amount is also the lowest possible award within the discretion of the trial judge in the instant case. After considering plaintiff’s injuries, past and future, and his permanent disability, we increase the general damage award to $100,000.
On the issue of damages for loss of wages, the plaintiff claims that he was working at two different hotels, the Hilton and the Clarion, at the time of the accident. He says that he worked a minimum of 45 hours a week at $3.50 an hour plus tips. Therefore, he estimates that he should have received at least $3,150 in lost wages. However, he failed to corroborate his testimony concerning his lost wages with testimony of supervisors or with any other evidence. No tax returns for any of the pertinent years were presented at trial. Therefore, we reject the plaintiff’s claim for lost wages and affirm the trial court’s decision on this issue.

Conclusion

For the above and foregoing reasons, the decision of the trial court is amended to award plaintiff $100,000 in general damages, plus $8,026.10 in specified medical expenses, subject to reduction for his one-third comparative negligence, for a total award of $72,017.40. In all other respects, the judgment is affirmed.
AMENDED AND AFFIRMED.